(28 Misc. Rep. 499.)

HENLY v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Term.   July 26, 1899.)

CARRIERS OF PASSENGERS—TICKETS—MUTILATION—ASSAULT.

The holder of a commutation ticket so mutilated it that all the fares were canceled before they had been used.   Without applying to the officials of the railroad company for relief, he attempted to take passage on the ticket, and when it was rejected by the subordinate whose duty it was. to cancel tickets he protested, and obstructed the passageways, whereupon he was removed by a policeman.   *Held*, that the company was not liable in damages as for an assault.   Per MacLean, J.

Appeal from city court of New York, general term.

Action by Henly St. John Henly against the Delaware, Lackawanna & Western Railroad Company.   From an order of the general term of the city court reversing a judgment for plaintiff, and also reversing an order denying a new trial (57 N. Y. Supp. 396), plaintiff appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

Arthur Furber, for appellant.

Hamilton Odell, for respondent.

MacLEAN, J.    Mr. Henly bought for the month of October, at the office of the defendant company in East Orange, a monthly commutation ticket, showing, over the fac simile of the signature of the general passenger agent, that he was entitled during that month to "sixty rides on continuous trains between East Orange and Hoboken," and that the ticket was "good for passage from New York only, over the Hoboken Ferries at Christopher or Barclay St., when presented to ferry collector for cancellation."   As handed to Henly, the ticket had on it at the top for such cancellation 30 F's in two rows of 15 each, below a blank margin designed to serve as guide for a "gauge punch," with which the collectors, or "choppers," as they are called in the parlance of the trial, could accurately punch out the F's as the tickets were presented to them in the rush of persons coming in single file through four narrow alleyways.   This margin Henly cut off to suit his own convenience and card case.   He removed none of the written or printed matter.   Because of such mutilation of the ticket, the punch sometimes cut out not only the intended F, but also a good part of another F, and so it came about, as Henly says, on Saturday, the 26th of October, that all of the F's for ferry passages had been canceled, and, as shown by the exhibit, the whole ticket had across the top but a ragged edge.   Then Henly went to the assistant superintendent of the ferries at Hoboken, and, showing the ticket, said:   "Here is my ticket so mutilated that I cannot use it any more. There are no rides on it, and I should have a ride to carry me over the rest of the month," to which, as he says, was returned:   "If you will mutilate your tickets, then you will have to suffer the consequences." The assistant superintendent testifies, without contradiction, that he also told him he had not anything to do with those tickets; that the railroad people were the ones to look to;  that he had not the

power to give him another ticket, or to pass him over the ferry; and
that he could not ride on that ticket. Henly says he had spoken at
least twice to a chopper about the way his ticket was canceled, and
that after this interview a chopper—whether the same or not is not
stated—let him through twice, though there were no F's to cancel.
On Wednesday evening, however, a chopper refused to let him pass,
and on his disputatious and obstructive refusal to leave the passage-
way, but 26 inches wide, and permitting passage only in single file,
the assistant superintendent, who was at hand, led him out, saying
that this was no use, and advising him to go to the railroad people,
and tell his case, and he would be all right. Thereupon Henly es-
sayed the adjoining and similar passageway, had his ticket again re-
jected by the chopper, and was once more led out by the assistant
superintendent, who turned him over to a policeman, saying he did
not desire to make a complaint against him, but wished him removed
from the premises. Though vanquished, he could argue still, and
started to explain his troubles to the officer, who told him it was no
place to argue; that he thought the proper place would be the office
for grievances; that he would have to leave the passageway clear
anyhow, and go somewhere else, as he was only blocking the passage,
there being then about 200 persons behind him, according to the
guess of the officer. And so, after all this, Henly went out, bought
a ferry ticket "under protest," and took the railway train he intended
to take. The degree of force used, if any, admittedly was of the
smallest,—merely enough to overcome the show of physical resist-
ance. Upon these facts, Henly, the plaintiff, seeks to recover in
this action, because the defendant refused to accept him as a passen-
ger under its said agreement, and assaulted him, and gave him into
the custody of a police officer, to his great indignity and public dis-
grace, and to the loss of his legal rights. After the denial of a mo-
tion to dismiss, the case was submitted to the jury, upon whose ver-
dict the plaintiff recovered a judgment for $200, to which he was
not entitled; from an order of the general term reversing which judg-
ment the present appeal is taken.

The regulation that the ticket—the evidence of the agreement be-
tween the defendant and the plaintiff—should be presented to a cer-
tain subordinate for cancellation was a reasonable one, enabling both
parties, as it did, to exhibit and prove their respective rights, espe-
cially when such cancellation was to be effected by a device so in-
genious that four choppers could scan, pass upon, and punch the
tickets of 600 persons hurrying past them in procession within a
quarter of an hour. Moreover, the plaintiff had signified his assent
to this and other regulations by subscribing his own name to them.
When the plaintiff saw that he had heedlessly so changed his ticket
that it would no longer evidence the real state of the arrangement be-
tween himself and the carrier, he might have applied to the defendant
through its general passenger agent or other functionary having the
disposal of tickets for a new one, or for other relief, and, failing to
obtain that, might have had his any grievances redressed by process
of law. He certainly could not have expected that the assistant
ferry master, or a person charged merely with the cancellation of the

ticket, could issue him a new ticket, or let him pass without one showing that he was entitled to pass.   Beyond the cost of his ferriage, which may be assumed to be small, the plaintiff proved no outlay of money, nor did he prove any considerable loss of time, as he did not even lose the train which he had set out to take.   He was caused no physical pain, and suffered no inconvenience save what he brought upon himself; and if, as he says, he thinks he was hurt before the people there, he got, if not what he coveted, what he provoked, and what he expected, for he admits that after his interview with the assistant superintendent he "knew he would be stopped, because there were no rides on his ticket," and anticipated that he would not be allowed to cross.   He arbitrarily undertook himself to right his wrong, real or imaginary, by standing where he had no right to stand, selfishly obstructing the passageway through which others were pressing to pass to their errands or to their homes.   He was, so far as he made it appear, and as could be ascertained from his ticket, a trespasser, and a disorderly person, whom the subordinates of the ferry company and the officer of police properly could, and were in duty bound, to remove.   If not the whole, at least so much of the verdict as was allowed for the alleged assault, and almost the whole of it must have been allowed therefor, was unwarranted and erroneous.   The order of the general term must be affirmed, and, under the stipulation accompanying the appeal, with judgment absolute against the appellant.

Order affirmed, with costs, and judgment absolute to the respondent.

FREEDMAN, P. J., and LEVENTRITT, J., concur in result.